**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROBERT E. SEDLACK,
<u>Plaintiff-Appellant,</u>

v.

BRASWELL SERVICES GROUP,
INCORPORATED, a/k/a Braswell Group
Inc.,
<u>Defendant-Appellee.</u>

No. 96-2650

ROBERT E. SEDLACK,
<u>Plaintiff-Appellee,</u>

v.

BRASWELL SERVICES GROUP,
INCORPORATED, a/k/a Braswell Group
Inc.,
<u>Defendant-Appellant.</u>

No. 96-2651

Appeals from the United States District Court
for the District of South Carolina, at Charleston.
David C. Norton, District Judge.
(CA-95-674-2-18)

Argued: October 29, 1997

Decided: January 12, 1998

Before WIDENER and ERVIN, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by published opinion. Senior Judge Phillips wrote the opin-
ion, in which Judge Widener and Judge Ervin joined.

_____

## COUNSEL

**ARGUED:** Annette Roney Drachman, LADDAGA & DRACHMAN,
P.A., Charleston, South Carolina, for Appellant. Robert Thomas
Lyles, Jr., OGLETREE, DEAKINS, NASH, SMOAK & STEWART,
P.C., Charleston, South Carolina, for Appellee. **ON BRIEF:** Linda C.
Garrett, LADDAGA & DRACHMAN, P.A., Charleston, South Caro-
lina, for Appellant.

_____

## OPINION

PHILLIPS, Senior Circuit Judge:

This case arose out of Braswell Group's ("Braswell") handling and
denial of Robert E. Sedlack's claims for benefits under an ERISA
employee benefit plan sponsored and administered by Braswell ("the
Plan"). Sedlack, a former Braswell employee, sued Braswell alleging
wrongful denial of benefits, breach of fiduciary duty, failure to pro-
vide requested Plan information, and unreasonable claims practices.
After a bench trial, the district court found for Braswell on all claims
except Sedlack's claim for failure to provide requested Plan informa-
tion, as to which the court found Braswell liable and awarded a statu-
tory penalty. The court then denied Sedlack's motion for attorney's
fees. Sedlack appealed, Braswell cross-appealed and we affirm on
both the appeal and the cross-appeal.

I

The case originated in Sedlack's allegations of an injury he claimed
to have sustained on April 16, 1991, from a slip and fall on a set of
stairs on the vessel SNELL where he was working for Braswell.
Claiming injury from the incident, Sedlack filed for benefits under the
Longshore and Harbor Worker's Compensation Act ("LHWCA").
When Braswell disputed Sedlack's version of the incident, the claim

2

was presented for decision to an Administrative Law Judge ("ALJ"). Among the issues before the ALJ was "[whether] an injury occurred on April 16, 199[1]." On directly conflicting evidence as to whether any slip and fall injury occurred as claimed by Sedlack, the ALJ denied benefits, finding "that the alleged accident did not occur as stated by [Sedlack]."

On September 15, 1994, Sedlack's attorney requested a copy of the Plan from Braswell. A copy was only provided on February 29, 1996. In the meantime, Sedlack had filed with Braswell a claim for benefits under the Plan based upon the injury allegedly sustained in the April 16, 1991 accident. Braswell administratively denied the claim, relying on Sedlack's assertion that the accident was work-related and the Plan's exclusion of benefits for work-related claims. Sedlack then brought this ERISA action under 29 U.S.C. § 1132 claiming that Braswell had (1) wrongfully denied his claims; (2) breached its fiduciary duty to Sedlack; (3) failed to comply with Sedlack's request for a copy of the Plan ("§ 1132(c) claim"); and (4) engaged in unreasonable claims practices. The action was tried to the district court without a jury and the district court found against Sedlack on all claims except the § 1132(c) claim; on that claim, the trial court ordered Braswell to pay penalties of $20 per day for the 531 days between September 15, 1994 (when Sedlack requested the Plan) and February 29, 1996 (when Braswell made the Plan available). Following entry of judgment, the district court denied Braswell's motion for reconsideration and Sedlack's motion for attorney's fees.

Sedlack then appealed from those portions of the judgment that rejected his wrongful denial of benefits, breach of fiduciary duty and unreasonable practices claims and that denied his motion for attorney's fees. Braswell cross-appealed from the portion of the judgment allowing the § 1132(c) claim and imposing the penalty as remedy.

II

We review the district court's conclusions of law de novo, its factual findings under the clearly erroneous standard, and its imposition of penalties and refusal to award attorney's fees for abuse of discretion. See West v. Clarke Murphy, Jr. Self Employed Pension Plan, 99 F.3d 166, 167 (4th Cir. 1996); Glocker v. W.R. Grace & Co., 974 F.2d

3

540, 544 (4th Cir. 1992) (penalties); Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1028 (4th Cir. 1993) (fees).

A

Braswell denied Sedlack's claims for benefits on the grounds that they were excluded by the Plan's work-related claims exclusion. That provision excludes "[c]harges arising out of or in the course of any occupation for wage or profit, or for which the Covered Person is entitled to benefit under any Worker's Compensation or Occupational Disease Law, or any such similar law."

The parties agree that although Braswell had authority to interpret the Plan, it was acting under a conflict of interest and that its decision to deny benefits should therefore be reviewed under a modified abuse of discretion standard. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989) ("[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a facto[r] in determining whether there is an abuse of discretion.") (quotation omitted).

The district court noted that throughout the LHWCA litigation and this case, Sedlack had consistently alleged that he was injured while working for Braswell aboard the SNELL. On that basis, the court concluded that Sedlack's own allegations established the applicability of the work-related claims exclusion. Sedlack challenges that ruling arguing that collateral estoppel bars operation of the work-related claims exclusion to defeat his claim, because the adverse decision in his LHWCA proceeding determined that his alleged injury was not work-related. We disagree.

Collateral estoppel forecloses "the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate." Ramsay v. INS, 14 F.3d 206, 210 (4th Cir. 1994) (quotation omitted). For collateral estoppel to apply, the proponent must establish that: (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been

4

a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum. See id.

Sedlack's invocation of issue preclusion fails on the "identity of issues" and "actually determined" requirements. The dispositive issue in the LHWCA proceeding before the ALJ was not whether the accident was work-related, but rather, "[whether] an injury occurred on April 16, 199[1]." Sedlack argues that the ALJ's finding that the accident did not occur as alleged by Sedlack was a finding that the accident was not work-related. The ALJ, however, made no findings as to the work-related or non-work-related nature of the alleged accident. The ALJ found simply "that the alleged accident did not occur as stated by [Sedlack]." Accordingly, the issue whether the injury was work-related was neither before the ALJ nor decided in the LHWCA litigation; collateral estoppel, therefore, cannot bar application of the work-related claims exclusion.**1**

Next, Sedlack argues that judicial estoppel bars Braswell from claiming that he suffered a work-related injury."Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation," John S. Clark Co. v. Faggert & Frieden P.C., 65 F.3d 26, 28 (4th Cir. 1995), and is designed to prevent a party from "playing fast and loose" with the courts and "protect the essential integrity of the judicial process." Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (4th Cir. 1982). Although "[c]ourts have had difficulty in formulating a specific test for determining when judicial estoppel should be applied," at least three elements must always be satisfied. Lowery v. Stovall, 92 F.3d 219, 223-24 (4th Cir. 1996), cert. denied, 117 S. Ct. 954 (1997). First, the party sought to be estopped must assert a position inconsistent with that taken in prior litigation and the position must be one of fact rather than law or legal theory. Id. at 224. Second, the prior inconsistent position must have been accepted by the court. Id. And third, the party sought to be estopped must intentionally have misled the court to gain unfair advantage. Id.

_____

**1** Braswell further argues that collateral estoppel may not be used to modify the terms of an ERISA plan. Since we find that the elements of collateral estoppel are not met, we need not address this issue.

5

Here, our inquiry need go no further than the first element. In the LHWCA case, Braswell argued that the accident did not occur. In this litigation, Braswell argued that if the accident occurred, it was work-related. Since these positions are not inconsistent, judicial estoppel cannot apply.

Finally, Sedlack argues that Braswell "failed to establish a causal connection between the loss claimed and the exclusion being applied." According to Sedlack, in order for the work-related claims exclusion to apply, Braswell must prove that Sedlack's injury was caused by a work-related accident. Even if such a requirement existed generally, it could not apply where, as here, Sedlack himself alleges his injury was work-related.

B

29 U.S.C. § 1104(a) sets forth the obligations of plan fiduciaries, requiring them to act "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104.**2** Sedlack contends that Braswell breached its fiduciary duty by advising its Claims Supervisor not to pay his claims. Since adherence to an ERISA controlled plan is not a breach of fiduciary duty, see Dzinglski v. Weirton Steel Corp., 875 F.2d 1075, 1080 (4th Cir.), cert. denied, 493 U.S. 919 (1989), Braswell did not breach its fiduciary duty by denying Sedlack's claims pursuant to a Plan exclusion.

Sedlack also contends that Braswell breached its fiduciary duty by (1) denying his claims "based on [Sedlack's] statements and on testimony that he had been injured in the course of his employment" and ignoring its own investigation which revealed Sedlack was not injured on the job and by (2) misrepresenting the fact that it had denied Sedlack's claims. As Braswell points out, however, even if these allegations are supported by the facts and the acts alleged constitute breaches of fiduciary duty, Sedlack's action still must fail. As found above, Sedlack's claims are excluded by the work-related claims exclusion. Since he is not entitled to benefits, there is no causal link

_____

**2** Braswell concedes it was a plan fiduciary.

6

between Braswell's alleged breaches of fiduciary duty and the harm for which Sedlack seeks to recover. See Hein v. FDIC, 88 F.3d 210, 224-25 (3d Cir. 1996), cert. denied, 117 S. Ct. 683 (1997).**3**

C

Sedlack alleged that Braswell violated 29 U.S.C.§ 1133 and engaged in unreasonable claims practices by failing to notify him of its reasons for denying his claims. He further alleged that "through its unreasonable claims practice" Braswell "directly and proximately injured the Sedlack . . . in the amount of unpaid medical bills." (Id.)

Section 1133 requires that every plan "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1). Although the district court found that Braswell's notices were defective, it held that Sedlack could not recover for unreasonable claims practices because a breach of section 1133 does not provide a claimant with any new substantive rights. "Where, as here," the district court concluded, "Sedlack's claim is not covered, Braswell's breach of section 1133 would not entitle him to benefits or to an award of damages." This reasoning is sound and sup-ported by persuasive judicial authority. See Ashenbaugh v. Crucible Inc., 1975 Salaried Retirement Plan, 854 F.2d 1516, 1532 (3d Cir. 1988) (noting "general principle" that "an employer's or plan's failure to comply with ERISA's procedural requirements does not entitle a claimant to a substantive remedy"), cert. denied, 490 U.S. 1105 (1989); Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1096 (9th Cir. 1985) ("A substantive remedy would be appropriate only if the proce-dural defects caused a substantive violation or themselves worked a substantive harm.").

_____

**3** Although Sedlack's complaint sought "equitable or remedial relief" on his breach of fiduciary duty claim, it is unclear what equitable relief would be appropriate. In the course of this litigation, Sedlack seems to have focused his efforts exclusively on obtaining monetary relief in the amount of the benefits allegedly due him.

D

29 U.S.C. § 1024(b)(4) provides that a plan administrator "shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1132(c) provides that if the administrator fails to supply the requested information within thirty days, he may be liable to the participant in the amount of up to $100 per day.

Finding that Braswell had not complied with counsel's request for Plan information, the district court imposed a penalty on Braswell in the amount of $20.00 per day for five hundred thirty-one days. Braswell challenges the district court's imposition of a penalty citing Firestone, 489 U.S. 101 (1989), and arguing that Sedlack was not a "participant" within the meaning of 29 U.S.C.§ 1002(7) and thus was not entitled to receive the requested Plan information.**4**

Section 1002(7) defines a "participant" as"any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from any employee benefit plan which covers employees of such employer." 29 U.S.C.§ 1002(7). Under Firestone, a former employee is a "participant" entitled to plan information only if the claimant has a "reasonable expectation of returning to covered employment" or "a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." Firestone, 489 U.S. at 118-19 (quotation omitted). The requirement that a claim be colorable"is not a stringent one" and is satisfied if the claim "is arguable and nonfrivolous, whether or not it would succeed on the merits." Davis v. Featherstone, 97 F.3d 734, 737-38 (4th Cir. 1996) (quotation omitted).

Here, although Sedlack's claim for benefits was ultimately unsuccessful, it was not entirely frivolous. The ALJ's statement of the issue

_____

**4** Sedlack does not argue that he was a plan "beneficiary."

before him and the phrasing of his ultimate conclusion gave Sedlack room to make a colorable collateral estoppel argument. Furthermore, Braswell has pointed to no case law directly supporting its argument that collateral estoppel (if applicable) could not be used to bar it from contending that the work-related claims exclusion applies.

Braswell argues that even if Sedlack was a "participant," the circumstances of the case do not warrant the imposition of a penalty. Two factors guide a district court's discretion in determining whether to impose penalties under section 1132: prejudice to the plaintiff and the administrator's conduct in responding to the request for information. See id. at 738. Although prejudice is a "pertinent" factor, "it is not a prerequisite to imposing a penalty." Id.

The district court imposed the penalty, noting that Sedlack's September 15, 1994 request was made in writing to Braswell's General Counsel, that Braswell did not respond to the request, and that Sedlack did not obtain the documents until February 29, 1996. In addition, the district court noted, Sedlack requested a copy of the Plan during discovery and it was only after a hearing on his motion to compel that Braswell finally made the Plan available.

Braswell challenges the penalty award, arguing that Sedlack requested the information "only once" prior to initiating this action and that his second request was not made until discovery was underway. This argument must fail as nothing in the statute requires that more than one request be made before penalties may be imposed. See 29 U.S.C. § 1132(c).

Noting that the attorney who requested the information "had never, to Braswell's knowledge, represented Sedlack," Braswell argues that it declined to produce the information out of concern for "privacy issues." Braswell offers no support for its suggestion that this "issue" can excuse its failure to provide Plan information. Moreover, had Braswell been genuinely concerned about this issue, it would have been a simple matter to verify the attorney-client relationship.

We dismiss as wholly unpersuasive Braswell's argument that its failure to provide the documents should be excused because it had difficulty locating the information since the Plan had not been in

9

effect for two years. Assuming this fact is even relevant, Braswell has produced no evidence establishing that it even looked for the documents.

Finally, Braswell asserts that contrary to the district court's conclusion that it did not provide a copy of the Plan until February 29, 1996, the opportunity to copy the Plan was made available to Sedlack no later than January 29, 1996. The applicable regulations, however, required Braswell to provide a copy of the Plan, not merely to make it available for copying. See 29 C.F.R.§ 2520.104b-1(b)(2).**5**

We therefore conclude that the district court did not err in awarding the challenged penalty.

E

The district court must consider five factors in deciding whether to award attorney's fees under 29 U.S.C. § 1132(g)(1):**6** (1) the degree of opposing parties' culpability or bad faith; (2) the ability of opposing parties to satisfy a fee award; (3) whether a fee award against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. See Quesinberry, 987 F.2d at 1029. The five-factor test is not a rigid one, but rather provides "general guidelines" for determining whether to award fees. Id. at 1029.

Sedlack argues that the district court failed to explain why the Quesinberry factors weighed against a fee award. We disagree. Contrary to this suggestion, the district court did indicate why the relevant factors required that the motion be denied. Furthermore, we note that

_____

**5** 29 C.F.R. § 2520.104b-1(b)(2) provides that "materials furnished upon written request, shall be mailed to an address provided by the requesting [party] or personally delivered to the participant or beneficiary."

**6** Section 1132(g)(1) provides:"In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

the relief sought in this case was of a purely personal nature; Sedlack did not seek to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA. Also, while Braswell failed to provide Sedlack with Plan information, there does not appear to be any evidence that it did so in bad faith. Finally, although Sedlack prevailed on one claim, he lost on three; while we found Sedlack's denial of benefits claim to be colorable, that is all it was and the claim ultimately failed. Thus, at least three of the five Quesinberry factors weigh against a fee award. Under these circumstances, the district court's decision to deny fees was not an abuse of discretion.

III

For the above reasons, we affirm the judgment in all respects challenged by Sedlack's appeal and Braswell's cross-appeal.

SO ORDERED